Case No. 17-2445 and 18-1715, Emily Kollaritsch et al. v. MI St Univ Bd of Trustees et al. for argument not to exceed 15 minutes per side. Mr. Bachman for the appellants when ready. Good morning, may it please the court. Michael Bachman from Pepper Hamilton on behalf of the appellants in the case. I'd like to reserve three minutes for rebuttal. You may. Title IX does not contain and express cause of action for damages. Notwithstanding, the Supreme Court has implied a private right of action for damages, but only in very narrow circumstances. And specifically, only where the recipient of federal funds engages in intentional gender discrimination. And that needs to be narrowly interpreted because this is spending clause litigation. And the Supreme Court and this Court have repeatedly said that in spending clause cases, we have to make clear that the recipient of federal funds understood what it was that they were being held liable for. So in the Davis v. Monroe County case, the Supreme Court implied a very narrow cause of action for peer-on-peer harassment. And that cause of action, where intentional gender discrimination is found, is only where the school has actual knowledge of known harassment and is deliberately indifferent to the harassment. And that deliberate indifference then subjects the student to harassment that is so severe, pervasive, and objectively offensive that it denies them an education benefit. So in Davis, there was ongoing harassment over a period of many months. The school had notice of the harassment, but it took no meaningful action to stop the harassment. And in that case, the Supreme Court said, okay, that might be the equivalent of intentional gender discrimination, where there's ongoing discrimination, you know about it, and you don't take reasonable measures to stop it. And in fact, in every case that this Supreme Court or that this court has- It seems to me, I understand the logic of your argument from the law itself. It seems to me in Davis, the Supreme Court and then the Tenth Circuit took that yesterday, I guess, or two days ago. And the Davis court expanded it beyond what you're talking about. So even if you're right as purely a matter of law, we have an obligation to follow the Supreme Court. And the Davis court, in defining subject to discrimination, broadened it beyond what you're arguing about, to vulnerable to or liable to or whatever is the language they used. And so why aren't we bound by that? And if we're bound by that, isn't it broader? Right. And, Your Honor, I think the Tenth Circuit misinterpreted Davis. And by the way, I mean, the facts of our case, by the way, are different than the Tenth Circuit. Oh, yeah, the Tenth Circuit's facts are different. We did something here, right? And after we did something, there was no further harassment. But let's talk about the language that they rely upon from Davis, okay? The court was giving meaning to what the term subjects means, right? Before that, it was talking about, well, you have to have control over the harasser and the environment in which the harassment occurs. Why do you have to have that control? So you can stop it, right? When the court was defining subjects, all it did was look to dictionary definitions. And it quoted, I think it was Random House's 1966 dictionary definition. And when you look up a dictionary definition, what does it contain? It contains synonyms. So what it was doing is just giving different meanings to the term subjects. And when it wrapped up its discussion of that, right, all of those definitions included the word expose. And ultimately, the court said, these factors combine to limit the damage liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to expose its students to harassment and cause them to undergo it under its program. So what this court was talking about is actually exposing them to harassment that occurs. So that's your friend's argument, is that you were deliberately indifferent to their complaints. And as a result, you exposed them to continued harassment. It didn't occur, Your Honor. It never – I don't know. But what they say is, well, we can discuss Gross, because I think there's an argument maybe that it did occur vis-a-vis Gross. In other words, you were deliberately indifferent to complaints from Kolarich, and Gross was raped by the same person. Which is a different claim, Your Honor. And when courts have – Wait. Why is it a different claim? Okay, so you've got a rapist on campus. Woman one complains about it. Right. The university does nothing. It didn't do nothing. I'm just – Under their own complaint, it didn't. Except my hypothetical. Does nothing. Right. Woman two gets raped. Deliberate indifference or no? Depends, Your Honor. There's a series of cases on that, and that's sort of what the courts have called a pre-assault claim. And in those circumstances, the defendant has to have knowledge that it's almost certain that the assault is going to occur. And there's a whole different line of cases on that. And Gross doesn't meet that. Now, she didn't appeal that issue, but she doesn't meet it because we took action against the respondent in Ms. Kolarich's case. And they plead that we didn't find that he was responsible for sexual assault. So there was – they haven't pled facts sufficient to show that it was almost certain that that assault was going to occur. So I think what they're really complaining about – You may have to say it's almost certain, but I still struggle. I understand your argument about Davis, but the Davis court says specifically this – uses this language. Why isn't that binding on us whether we agree with it or not or make them liable or vulnerable to it? Because it's what that means, Your Honor. And in the Noble court, the district court explained exactly what I'm saying, which is that it didn't mean that you're liable or vulnerable to harassment that never occurs, that you fear for harassment. It was saying makes you liable or vulnerable to harassment that actually occurs. Taking actions which aren't – Hold on. I'm sorry. I'm sorry to interrupt you, but it says if a funding recipient does not engage in harassment directly, it may not be liable for damages unless it's deliberate indifference subjects its students to harassment, and that is – so what they mean by subjects to is that it must at a minimum cause. That seems like what you're arguing about. You're saying it's limited to cause, and what your friend is saying is no, no, no. There's also an or, and the or broadens it. I'm sorry. Go ahead. It's synonyms, Your Honor. It's two ways of describing the same thing, which is subjects. So someone – and even if they had slightly different definitions, one can cause something, meaning directly doing it yourself, and one can also make someone more liable or vulnerable to something that happens by not taking sufficient action to prevent it. And that's what the court said in Noble. And Judge Batchelder, you affirmed that, saying that the court's reasoning was correct and a separate opinion on that issue would be duplicative. So that's been addressed in this circuit, and it's been addressed by a panel in this circuit. And I also submit, Your Honor, that the interpretation that they're asking for would basically mean that we have no choice but to expel students. It's one thing to be able to – if the obligation is to stop ongoing harassment, we know when that occurs. We can measure it. We can say, did the harassment continue or not? What they're arguing instead is that we have an obligation to take away the effects of someone else's harassment to make them feel more comfortable on campus. Wait a minute. They're saying you have an obligation to promptly investigate and hold a hearing and determine if it occurred and then take appropriate action. And they're saying you didn't do that. That's not gender discrimination, Your Honor. Davis was limited to – No, no, no. I agree with that, but that goes to the deliberate indifference. But that's the whole point, Your Honor. I mean, if it's not gender discrimination, then it's not actionable under Title IX. No, no, no. It could be. If you're treating – if their argument is – so their argument is basically you're not doing anything against these men because of my gender. That's not what they've alleged at all, Your Honor. They haven't alleged that. There's no allegation that explained that the action that we took was because of their gender. They're asking the court to infer that under a deliberate – But this is – hold on. I'm sorry. But this is a motion to dismiss stage. And so they've alleged it. They claim it. Why don't we have to accept it as true if they allege sufficient facts underlying the legal claim? They don't allege intentional gender discrimination in the form of we took action because of their gender. So in the opposite types of these cases, the reverse Title IX cases, Your Honor, your decision in the Baum case, to plead a Title IX in those – an erroneous outcome claim, you have to not only show that the outcome was erroneous, you have to show it was motivated by gender. And it's one thing, as we say in a brief, it's one thing to infer intentional gender discrimination where students are engaging in gender discrimination, harassment, which equals gender discrimination, and you let it happen. It's an entirely different thing to say that failing to remedy the effects of that is the equivalent of intentional gender discrimination. That's not what the Davis court said. And I think what the plaintiffs are asking the court to do here is create an obligation. And remember, this is – the only question before the court is whether there's a damage remedy. The Department of Education can enforce this more broadly. That's what Gebzer said. There might be other causes of action. The only question is whether there's a damage remedy. But the question before us today is, at least I thought, is what exactly the plaintiff has to plead in order to survive the motion to dismiss. Right. And that boils down to, does the plaintiff have to plead some specific act of gender discrimination after the university or whatever institution was put on notice of the prior acts of discrimination? And the answer to that is yes, it does. Because otherwise, the school is not subjecting them to discrimination. The school is failing to remedy past discrimination. And, Your Honor, in the MD case that – In Davis, though, the court – and the issue, as it was certified to us, is that the deliberate indifference caused the continuing gender discrimination. However, that has to be pled. And so one of the things that I've been really struggling with in this case is, in Davis, the court said, well, we're talking about deliberate indifference. It's the same thing we've used in other contexts, specifically 1983 cases. They never go any farther than that in Davis to say, and here's what that means. But if you look at deliberate indifference in some of those other contexts, Eighth Amendment context, for example, prison-type things, you know, you get into the objective and the subjective components and how those operate together, and there's never any discussion of what deliberate indifference really would mean in a context like the Title IX case. And so I'm struggling with, well, what are we looking at in deliberate indifference to determine whether you have pled that that is what caused whatever it is that you're now complaining about? And I think the answer is that the clearly unreasonable response has to cause you to be subjected to harassment. It's not a clearly unreasonable response to remedy past instances of harassment. And I do think Davis was a very close case. And I think in this case in particular, you need to read both the dissent and the majority, because they were talking to each other. And the dissent kept saying, you're creating this very broad cause of action. You are creating a cause of action to remedy gender discrimination. You are going to make people have to impose particular remedial demands. And the majority kept saying, no, we're not, no, we're not, no, we're not. And I think you need to take them at their word, because they're clearly here trying to create a cause of action which is very different than Davis and very different than every case that this court has, every case that I'm aware of, at least, that this court has considered, where you have ongoing harassment and the court has said the discrimination is failing to stop it. And, Your Honor, I think the only solution. Your time is up. Thank you. Good morning, Your Honors. May it please the court. Alexander Zalkin on behalf of the plaintiffs in this matter. Your Honors, if you would indulge me, I'd like to read just the sentence in Davis that we're talking about here because it really supports my argument. And that is, quote, the deliberate indifference must at a minimum cause students to undergo harassment or make them liable or vulnerable to it. A plain reading of this sentence resolves this issue. And this is exactly what the court in Farmer that the Tenth Circuit just came out with a couple days ago that Your Honor referenced. This is what the court in Farmer seized on. What the court in Farmer said was, quote, the Supreme Court in Davis has already answered the legal question. Davis then clearly indicates the plaintiff can state a viable Title IX claim by alleging alternatively either that KS used deliberate indifference to their reports of rape, caused plaintiffs to undergo harassment, or made them liable or vulnerable to it. And as justification for that conclusion. Your friend argues that those are synonyms. And he points to the next paragraph where he says that only then can a recipient be said to expose its students or cause them to undergo. And so what he's saying is you have to. It can't be just being liable to or vulnerable to. It's you have to be exposed to continued harassment. So what the court, I think, was concerned with in that next paragraph, when it's talking about the context of the harassment and control over the harasser, was I think actually a hypothetical would probably illuminate or help to answer that question. And that is, let's say you have a stranger that comes onto campus, a third party stranger that comes onto campus and rapes a student. And that stranger has no connection to the school, has no reason to be on campus anymore. And the student reports that to the school and the school doesn't do anything because it can't do anything. In that case, there's no control over the harasser. And therefore, there's no additional there's no vulnerability to additional harassment. So but if I can get back to the farmer decision as justification for their holding, they say we must give effect to each part of that sentence, that sentence that I read earlier. We must give we must give effect to each part of that sentence. And your honors, that makes sense. And as the district court in Takla versus Regents of the University of. So your argument is you can subject someone. I'm sorry to interrupt you, by the way, to discrimination in three ways. And that is you can basically cause them to continue to undergo discrimination. You can make them liable to discrimination or you can make them vulnerable to it, which liable and vulnerable probably mean the same thing. I would argue that viable and vulnerable are synonyms. So what are the minimum amount of facts which you must plead in order to make someone? Because I think your argument hangs on vulnerable to let's use vulnerable. It's easier to understand. Make some vulnerable to harassment. Is it enough to say they're still on campus and I see them every day? I think that I think that would be enough. If that is so. Then how can we say we're giving effect to the very specific statement in Davis? We stress that our conclusion here that recipients may be liable for their deliberate deliberate indifference to known acts of peer sexual harassment does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. So I think your position with that. Sure. So I think there are ways that a school can limit the vulnerability of a victim. Not then. It's not just expelling the perpetrator or the alleged. You just said seeing them as an off. So you are in essence to judge Batchelder's question asking for particular discipline as a result of simply the allegation itself. Well, I should remember, even assuming an investigation, there has to be a time period in which they investigate. Correct. And I should amend my answer to say seeing them is enough if the school has not taken any measures to protect the victim's safety on campus. And there are ways of doing that. But aren't you saying that the victim, because of her vulnerability, gets to decide what those measures have to be? Not necessarily. Or she's not going to be relieved of her vulnerability. Not necessarily, Your Honor. There are ways that schools have handled these situations. For example, no contact orders where a perpetrator is told you're not allowed to contact the victim. So if upon an allegation they put a no contact in while they investigate, you concede there wouldn't be deliberate indifference. Well, that's not the deliberate indifference question. I think this goes more towards the vulnerability to additional harm. No, I agree. But, I mean, ultimately, Wright goes to whether they're being indifferent to the vulnerability. And so I agree with you that they're separate. But my question is the ultimate question. Yeah, I think it's really a factual question as to what measures were appropriate for that particular instance. So we're going to have juries deciding in each case what measures each university takes are appropriate? I think that the deliberate indifference inquiry is a factual question. No, I agree. But what's the minimum standard that you have to plead? You have to plead a vulnerability to additional harassment. That's the minimum. The victim was vulnerable to additional harassment by virtue of the fact that an institution didn't take reasonable or effective measures to prevent ongoing harassment. But Davis specifically says that there's no reason to think that the question of whether or not the measures are reasonable wouldn't be a question of law. What Davis says is that it could be a question of law in certain circumstances that are so clear it could be decided as a matter of law. It doesn't say that it's always a matter of law, and I think there's authority that suggests it's actually a question of fact. The deliberate indifference inquiry is a question of fact. Doesn't that – I share the concern that Judge Batchelder, I think, is expressing, which is that if these words are interpreted the way you're suggesting, you're always going to get passed a motion to dismiss if you don't like what the punitive measures were. You can say, I left campus because the stay-away order wasn't strong enough, or it took you too long to enter the stay-away order, or the punishment wasn't strong enough, or you didn't expel them. Or I can say I stayed on campus and I was subjected to that because I was worried about that all the time. And so those are all factual issues. So, ipso facto, if not technically, you're always going to be able to challenge the punishment that a person is issued, because you can always – I'm asking – can't you always turn that into a question of continuing vulnerability? You either leave campus, in which case that was the harm, you felt you had to leave, or you're on campus and you have an argument at least, which has to go past stating a claim to challenge whatever the response was. That's the concern I have. So through a broad interpretation of this vulnerable language, you turn the Title IX cause of action into a review of the punishment that the alleged person was engaged in. So I disagree with you on that last part of your question, and that is you're not reviewing the punishment that an alleged perpetrator receives. For example, after there's been an investigation and a disciplinary hearing and then you have punishment, I agree with you that a victim can't come into court and say, you know what, that punishment was inappropriate. Davis clearly prohibits that. Yes, but over in this language, my question is, assuming it prohibits that, how do you square that prohibition with an argument that is, in every conceivable case, going to admit of an allegation to that effect that withstands a motion to dismiss? Well, I don't think... You hypothesize one, because I can't imagine. You could always say, you didn't come back hard enough, and I get hives because of that, which maybe they do, I don't know. But that would mean that you could always come in and allege that. But what I think the question is focused on is the institution's conduct in preventing a vulnerability to additional harassment. So if, for example, they take... You're equating that with how much you restrict the perpetrator. I'm sorry, can you repeat that? You are equating that question of how much vulnerability they feel with the degree to which the perpetrator is restricted or expelled or punished or whatever. They amount to the same thing if you allow that. I'm equating it to the way that a perpetrator is, or the measures that are put in place to prevent vulnerability. I mentioned, for example, a no-contact order. It could be moving people's housing situation so they're not in the same dorm. It could be changing academic schedules so they don't have the same classes. What if that doesn't assuage the feelings of vulnerability? Well, I think this court actually in Vance discussed that. This court in Vance talked about that a school has an obligation to prevent ongoing harassment. And not only that, if it learns that its measures to prevent ongoing harassment were inadequate, it needs to take new additional measures. So this now puts what the university does, right? If they take certain measures and the victim doesn't feel they're sufficient, they're subject to a lawsuit, no matter what. Is that right? I think a victim has a right to bring them. No, I understand that, but I'm saying that we'll withstand a motion to dismiss. So they take certain measures, they put in place certain things, and then no contact. And she is walking on campus, and every day, because they're going to classes, they cross. She could sue and withstand a motion to dismiss because she feels, and I know it's not your language, so I'm not vulnerable to harassment. Is that fair or unfair? I think that is fair to the extent that the school has taken measures to prevent additional harassment, to limit that vulnerability. If the school hasn't taken any measures to limit that vulnerability, then it hasn't fulfilled its obligation. So in this case, to take it to this case, in Coleridge, you would argue because they didn't do anything about the dorm, they didn't do anything, and then subsequent stalking occurred, that she was vulnerable to harassment as a result of their deliberate indifference. And I know I'm flipping them. Yeah, that's okay. I would argue that she suffered actual subsequent harassment as a result. Okay, fair. Fair. But, for example, if you take Jane Rowan's case, in Jane Rowan's case, she reported it to the university. The university did nothing for several months. And in the meantime, they put nothing in place to prevent her from not only seeing her harass her or her rapist on campus, but nothing to prevent her rapist from harassing her again. But here's the thing. If they take steps, let's just talk in generic terms. If the university takes steps to ensure no contact, and the victim still feels vulnerable to harassment during the pendency and the investigation, can they sue then? I think that if a school takes objectively reasonable steps to prevent the harassment, and I'll analogize it to the deliberate indifference inquiry. Davis doesn't say this, but plenty of courts say that deliberate indifference is a question of fact. However, Davis says that, yes, in certain circumstances, when it's clear that a school did not act with deliberate indifference, you can decide that case as a matter of law. I think it's similar to what Your Honor is asking. Yes, if a school, for example, issues a no-contact order, moves the perpetrator, provides a police escort to the victim to make sure that the perpetrator doesn't harass her, and does all these things, and the victim still, at that point, still feels vulnerable, I think, yes, in a limited circumstance, a court could say, as a matter of law, that that vulnerability was unfounded and dismiss it out at 12B6 stage. As long as they take some action, then, because the worry about vulnerability that Judge Batchelder is bringing up is that, right, you can always feel vulnerable to, no matter what they do, short of expulsion. And that is clearly contrary to Davis, because now we're saying to the university, look, during the pendency of the investigation, even, you have to expel, which, of course, is contrary to due process. But that's not what I'm arguing. What I'm arguing is that a school needs to take steps to prevent the harassment. That limits the vulnerability. And, Your Honor, I see my time is just about up. If there are no more questions. Anything? Anything? Thank you very much. Thank you, Your Honors. So, Counsel, can I ask you about that? Of course. Because that last point that your friend makes, it seems to me fair, which is what he's saying is, look, when they complain, they have to take steps to prevent ongoing harassment. And if they don't, then it's enough to withstand a motion to dismiss if subsequent harassment or vulnerability to harassment occurs. Then you're to what is vulnerability? Oh, I get that. At Roger's point, that could be anything. No, no, no. Wait, I get that. But that's the Supreme Court's language, right? Now, I get they've also limited it, as Judge Batchelder said. But it's still the language. So subject to ongoing harassment. So what about the point about Kohlerich to bring it to this case? She was subject to stalking by the complaint as a result of the university not doing anything. I don't think that's accurate, Your Honor. The way it's pleaded is there's a sequence of events. She alleges that she was assaulted. Several months later, she reported it. Right. Then she alleges that she encountered him. She doesn't allege she ever told the university that there was a problem or an issue. The university took action. Well, wait. She alleges she was assaulted. Yes, Your Honor. She complains. And we launch an investigation. We do something. Yes, Your Honor. Yeah, you launch an investigation. But then she stalked. After the first investigation is completed. And when this court has analyzed deliberate indifference claims like in Stiles, just because subsequent harassment occurs again doesn't mean that the response was clearly unreasonable. We put in place a no-contact order. We took action. I thought an official at Michigan State said that the action that they took even was a mistake. At least they alleged that. The prior action of not separating them, Your Honor. But again, that goes to the encounter issue. And the allegations, they were told that after the fact. But we have to accept her allegations as true. And she alleges that she was stalked after. And then she reported it. And the school took action. I'm sorry. She reports. In her mind, school does nothing. She's then stalked. She doesn't plead that we did nothing. She pleads we launched an investigation. And we didn't find in her favor. But we launched an investigation. We did take action. And she had a PPO. So it's two separate instances. And in each case, there was action taken. And there was no further harassment. And, Judge Rogers, I think you hit the nail on the head that this is, if, it's one thing to be able, we can measure. If the test is whether we've taken reasonable action to stop harassment, we can measure whether that's occurred. If the test is taking reasonable action to make you feel less vulnerable, there's but one solution, Your Honor, and that's to expel the student. And, Your Honor, the MD case said that's not sufficient. And, again, what they're asking for is that we take specific remedial steps. We issue no contact orders. What they really want is that the person is expelled. And Davis said there's no obligation to do that. And, again, I think. Before you're out of time, on this appeal, this is not an appeal as of right. It's an appeal that was certified by the district court, or at least, was it 1292B? 1292B, Your Honor, yes. What's the issue that the district court said they wanted us to answer? Well, the issue that was certified. The exact words. Right. I don't have the exact words, but the issue was basically whether. Ultimately, it doesn't matter, but the. I understand that it doesn't matter. I'm still curious about what that issue is. Basically whether further harassment is required in order to state a timeline claim. Your answer to that is. Yes. You say further action is further harassment. There has to be ongoing harassment. Not a single instance of past harassment, which Davis said wasn't actionable. You can't go out and say some subsequent harassment is required without saying whether there was such some subsequent harassment in this case. Because it looks like there was some subsequent harassment in some of these cases. Well, I don't think that there was, Your Honor. I know you don't think that there was. But that's not Judge Rogers' point. I'm sorry to interrupt you. That's not in front of us. What's in front of us is whether some subsequent harassment is required. I think what's really in front of you is whether the District Court properly denied our motion to dismiss. Really? We took interlocutory appeal over that versus a legal question? Well, Your Honor, the Supreme Court has said that once you take the appeal, then you have jurisdiction over the order. That doesn't mean that that's what we have to do. I understand, Your Honor. Could we just say you have to show something and we don't say whether that something is here or not? We'll let the District Court figure that out. The District Court is asking for some guidance so you can really read that between the lines. The cases are all over and the District Court wants to know, can I just throw this whole case out? I don't think I can, but if the Court of Appeals is going to make me do it, I might as well not go through all of this. But if we think, well, yeah, it's not that easy an answer, you're going to have to look at this and you're going to have to look at that.  I would suggest that at least in the two cases where the only allegation is the mere presence on campus, that can easily be decided by this Court. Thank you, Your Honor. Counsel, thank you very much for your thoughtful arguments. The case will be submitted. Please call the next case.